**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 24-mj-146** |
| | **:** | |
| **MICHAEL HENNESSEY,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE**

In the midst of a violent riot, Michael Hennessey unlawfully entered the U.S. Capitol and, on multiple occasions, joined collective efforts to push through police lines. For his actions on January 6, Mr. Hennessey is currently charged with one felony and four misdemeanors. The Government is not aware of evidence that Mr. Hennessey assaulted any police officers on January 6, and, primarily for that reason, the Government agreed that Mr. Hennessey may remain on release pending trial, without a curfew, home detention, or monitoring.

Here, the conditions that Mr. Hennessey surrender his passport and not travel internationally without Court approval are among the minimum conditions necessary to ensure the safety of the community and ensure Mr. Hennessey's appearance at trial and other court proceedings. Mr. Hennessey's involvement in the January 6, 2021, riot and the circumstances surrounding his arrest justify these restrictions. Accordingly, the Court should deny Mr. Hennessey's motion.

**BACKGROUND**

On January 6, 2021, Mr. Hennessey was among the first rioters to breach the Capitol building, entering through the Senate Wing Door at 2:15 p.m.—just two minutes after its violent first breach. ECF No. 1-1 at 4. Once inside, Mr. Hennessey made his way to the Crypt, where he

positioned himself at the front of a crowd facing off against U.S. Capitol Police ("USCP") officers attempting to prevent the rioters from advancing further. *Id.* at 6. Mr. Hennessey and other rioters pushed against the USCP officers and eventually overpowered the police line at approximately 2:25 p.m. *Id.* After pushing past the police in the Crypt, Mr. Hennessey advanced, at the front of the mob, to the Hall of Columns and later entered the office of House Majority Leader Steny Hoyer with a group of other rioters. *Id.* at 7.

At 2:36 p.m., Mr. Hennessey entered the Rotunda and then walked in the direction of the Senate. *Id.* at 8. While in the Small Senate Rotunda, Mr. Hennessey and a handful of other rioters once again faced off against two police officers. *Id.* at 9. In open-source video of this interaction, voices coming from the group of rioters, including Mr. Hennessey, can be heard shouting "NANCY, NANCY" and saying "where's her office? Pelosi?" *Id.* This crowd, with Mr. Hennessey at the front, eventually pushed past these officers, but they soon encountered a police line—just outside the Old Senate Chamber—blocking the path to the Senate. *Id.* At 2:47 p.m., Mr. Hennessey joined other rioters in collectively pushing against this police line. *Id.* at 9–10.

After officers near the Old Senate Chamber deployed chemical spray and regained control of the hallway, Mr. Hennessey returned to the Rotunda and, once again, joined other rioters to push against police lines. *Id.* at 10. Specifically, Mr. Hennessey joined the mob in pushing against officers blocking a doorway, which led down a set of stairs to the Upper West Terrace and behind police lines. *Id.* at 10–11. The mob pushed against these officers with such force that at least one officer fell down these stairs. *Id.*

The police eventually began to regain control of the Rotunda, and Mr. Hennessey exited the building at approximately 3:10 p.m. *Id.* at 11. Even then, however, Mr. Hennessey remained

just outside, filming and cheering on other rioters as they threw objects at police officers attempting to clear the East Rotunda Doors. *Id.* at 12.

On April 29, 2024, Mr. Hennessey was charged via Complaint with violations of 18 U.S.C. §§ 231(a)(3) (Civil Disorder), 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds), and 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted building or Grounds); and 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building) and 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). ECF No. 1.

At his initial appearance in this District on May 21, 202, Magistrate Judge G. Michael Harvey ordered that Mr. Hennessey be released on conditions, including a requirement that the Court approve all travel outside of the Continental United States. ECF No. 13. As a term of these conditions, Mr. Hennessey surrendered his passport to the Pretrial Services Agency for the District of Columbia.

Mr. Hennessey now moves, mere days before his proposed trip, to modify his pre-trial release conditions to allow him to travel internationally to Mexico from August 31, 2024, to September 7, 2024, to attend a wedding.  ECF No. 16.

## **ARGUMENT**

### I.    **Applicable Authority**

Under the Bail Reform Act, if pretrial release (a) can reasonably assure the defendant's appearance at required court proceedings and (b) will not endanger the safety of any other person or the community, a judicial officer must release the defendant pending trial, subject to, at minimum, two standard conditions: not committing crimes and cooperating in the collection of DNA. 18 U.S.C. § 3142(b). However, if the judicial officer determines that these two conditions alone "will not reasonably assure the appearance of the person as required or will endanger the

safety of any other person or the community," they may impose additional conditions. 18 U.S.C. § 3142 (c)(1).  In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B).  These conditions may include the condition that the person "abide by specified restrictions on…travel." 18 U.S.C. § 3142(c)(1)(B)(iv).  The Court is authorized to impose "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B)(xiv).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) ("Section 3142(g) factors").  The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

## II.   The Court Should Not Modify Mr. Hennessey's Release Conditions

Mr. Hennessey asks the Court to modify his conditions of release to allow him to travel to Mexico to attend a wedding. The United States opposes because Mr. Hennessey is already subject to the "least restrictive" combination of conditions necessary to ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B). Mr. Hennessey was not required to post bond, and is not subject to home detention, a curfew, or GPS monitoring; instead, he must submit to supervision by Pretrial Services, cannot possess firearms, and may be subject to testing for prohibited substances. ECF No. 13. Together with these relatively limited conditions, the passport and travel

restrictions create the least restrictive combination of conditions required to mitigate the danger that he poses to the community.

Additionally, Mr. Hennessey's desired trip to Mexico presents a heightened risk of flight.

> International travel restrictions are imposed due to the simple fact that once the defendant leaves the United States, the District Court, the Pretrial Services Agency, and U.S. law enforcement lose jurisdiction over him. If a defendant in the United States removes his GPS bracelet or travels beyond his permitted boundaries, the Pretrial Services Agency can send its officers, U.S. marshals, or local law-enforcement to search for and detain him. Those options are not available if the defendant takes those actions while traveling in a foreign country.

*United States v. Irizarry*, No. 22-3028, 2022 WL 2284298, at *2 (D.C. Cir. June 24, 2022) (Wilkins, J., dissenting). Applying the 3142(g) factors to this case, this Court should deny Mr. Hennessey's motion to modify these conditions of release.

Mr. Hennessey's conduct on January 6, 2021, was serious and aggressive. He is facing a felony charge, as well as multiple misdemeanors. Mr. Hennessey was one of the first rioters to enter the Capitol Building—even before members were instructed to, and did, evacuate the chambers. ECF No. 1-1 at 1, 4. Once inside, Mr. Hennessey repeatedly joined the mob in violent pushes against police lines in the Crypt, in the Rotunda, and outside the Old Senate Chamber. *Id.* at 6, 9–10. Mr. Hennessey's aggressive conduct at the Capitol on January 6, 2021, weighs against allowing him to travel.

The evidence against Mr. Hennessey—which includes surveillance footage and body worn camera footage—is very strong. Additionally, the Government is in the process of extracting and scoping evidence from Mr. Hennessey's cellular phone. This additional evidence could have an impact on Mr. Hennessey's potential exposure and, in turn, his risk of flight.

Although the Mr. Hennessey has complied with his release conditions so far, the Government has concerns about travel outside of the United States, where the Government would have no recourse if he were to violate his conditions or fail to return. As courts in this district have

noted when denying similar motions, "[t]he Government's lack of recourse should [a] Defendant violate his pre-trial conditions during [an] international trip weighs against" allowing a defendant to travel outside U.S. jurisdiction. *United States v. Orlando*, 24-cr-040 (CKK), ECF No. 20.

Mr. Hennessey's travel is also non-essential. The District Court in *United States v. Ondulich* permitted the defendant to travel multiple times to Mexico for a death in the family. 23-cr-242 (APM), ECF No. 24. The Government also didn't oppose the defendant's motion to modify the conditions of release. *Id.* Mr. Hennessey's trip to Mexico, on the other hand, is non-essential. While, no doubt, Mr. Hennessey would enjoy being present for his brother's wedding, that does not mitigate the severity of Mr. Hennessey's actions on January 6, 2021.

Mr. Hennessey's "international travel . . . will need to wait until he is no longer facing felony charges arising from his ill-advised domestic travel in January 2021." *United States v. Owens*, 21-cr-296 (RDM), May 23, 2022, Minute Order; *see also United States v. Williams*, 21-cr-377 (BAH), Minute Order, January 7, 2022 (denying the defendant's request for non-essential foreign travel to Jamaica noting that the defendant "surrendered his entitlement to unfettered international travel" when he joined the riot on January 6, 2021).

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Hennessey's motion to modify his conditions to permit him to apply for a passport and travel internationally should be denied.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

6

By:      /s/ Sean J. Brennan
         SEAN J. BRENNAN
         Assistant United States Attorney
         NY Bar No. 5954128
         601 D Street NW
         Washington, DC 20530
         sean.brennan@usdoj.gov
         (202) 252-7125

<u>CERTIFICATE OF SERVICE</u>

On this 22nd day of August, 2024, a copy of the foregoing was served on counsel of record

for the defendant via the Court's Electronic Filing System (ECF).

By:     */s/ Sean J. Brennan*
        SEAN J. BRENNAN
        Assistant United States Attorney
        NY Bar No. 5954128
        601 D Street NW
        Washington, DC 20530
        sean.brennan@usdoj.gov
        (202) 252-7125